| UNITED STATES DISTRICT COURT | EASTERN DISTRICT OF TEXAS |
|---|---|

| UNITED STATES OF AMERICA | § | |
|---|---|---|
| | § | |
| *versus* | § | CASE NO. 4:13-CR-17(5) |
| | § | |
| JASON BRUNO DUVALL | § | |

**MEMORANDUM AND ORDER**

Pending before the court is Defendant Jason Bruno Duvall's ("Duvall") Motion for Compassionate Release Pursuant to Title 18 U.S.C. § 3582(c)(1)(A) (#522), wherein Duvall requests that the court modify his sentence and release him from prison due to the threat of Coronavirus Disease 2019 ("COVID-19"). The Government filed a response in opposition (#525). United States Probation and Pretrial Services ("Probation") conducted an investigation and recommends that the court deny the motion. Having considered the motion, the Government's response, Probation's recommendation, and the applicable law, the court is of the opinion that the motion should be DENIED.

I.  Background

On April 23, 2015, Duvall pleaded guilty pursuant to a non-binding plea agreement to an Information charging him with Conspiracy to Possess with Intent to Manufacture and Distribute Methamphetamine. On September 9, 2015, the court sentenced Duvall to 151 months' imprisonment, followed by a 5-year term of supervised release. He is currently housed at Federal Correctional Institution Forrest City Low located in Forrest City, Arkansas ("FCI Forrest City Low"). Duvall's projected release date is June 6, 2026.

II.     Analysis

On December 21, 2018, the President signed the First Step Act of 2018 into law.  *See* First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194.  The Act, in part, amended 18 U.S.C. § 3582(c), which gives the court discretion, in certain circumstances, to reduce a defendant's term of imprisonment:

> The court, upon motion of the Director of the Bureau of Prisons ("BOP"), or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that extraordinary and compelling reasons warrant such a reduction; or the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of the [BOP] that the defendant is not a danger to the safety of any other person or the community, as provided under section 3142(g); and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission . . . .

18 U.S.C. § 3582(c)(1)(A).  This provision is commonly referred to as "compassionate release."

Prior to the First Step Act, only the Director of the BOP could file a motion seeking compassionate release.  *See Tuozzo v. Shartle*, No. 13-4897, 2014 WL 806450, at *2 (D.N.J. Feb. 27, 2014) (denying petitioner's motion for compassionate release because no motion for his release was filed by the BOP); *Slate v. United States*, No. 5:09-CV-00064, 2009 WL 1073640, at *3 (S.D.W.Va. Apr. 21, 2009) ("Absent a motion from the BOP, the Court lacks authority to grant compassionate release.").  The First Step Act amended § 3582(c) by providing a defendant the means to appeal the BOP's decision not to file a motion for compassionate release on the defendant's behalf.  *United States v. Cantu*, 423 F. Supp. 3d 345, 347 (S.D. Tex. 2019); *United*

*States v. Bell*, No. 3:93-CR-302-M, 2019 WL 1531859, at *1 (N.D. Tex. Apr. 9, 2019). The plain language of the statute, however, makes it clear that the court may not grant a defendant's motion for compassionate release unless the defendant has complied with the administrative exhaustion requirement. 18 U.S.C. § 3582(c)(1)(A); *United States v. Alam*, 960 F.3d 831, 833 (6th Cir. 2020) ("Even though [the] exhaustion requirement does not implicate [the court's] subject-matter jurisdiction, it remains a mandatory condition."); *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020) ("[T]he exhaustion requirement . . . presents a glaring roadblock foreclosing compassionate release."). Thus, before seeking relief from the court, a defendant must first submit a request to the warden of his facility to move for compassionate release on his behalf and then either exhaust his administrative remedies or wait for the lapse of 30 days after the warden received the request. 18 U.S.C. § 3582(c)(1)(A); *United States v. Harris*, 812 F. App'x 106, 107 (3d Cir. 2020); *United States v. Springer*, No. 20-5000, 2020 WL 3989451, at *3 (10th Cir. July 15, 2020) (defendant "was required to request that the BOP file a compassionate-release motion on his behalf to initiate his administrative remedies" (citing *Raia*, 954 F.3d at 595)); *Alam*, 960 F.3d at 833-34; *United States v. Soliz*, No. 2:16-190-3, 2020 WL 2500127, at *3 (S.D. Tex. May 14, 2020) ("§ 3582(c)(1)(A) does not provide this Court with the equitable authority to excuse [defendant's] failure to exhaust his administrative remedies or to waive the 30-day waiting period." (quoting *United States v. Reeves*, No. 18-00294, 2020 WL 1816496, at *2 (W.D. La. Apr. 9, 2020))).

In his motion, Duvall maintains that he made a request to the warden for compassionate release and more than 30 days have elapsed since the request. Attached to his motion is a document dated May 12, 2020, addressed to Warden Hendrix in which he requests compassionate

3

release based on the COVID-19 pandemic. Duvall asserts that he has "serious health ailments that would if contracting the virus could prove fatal," claiming to have asthma, high blood pressure, and an enlarged heart. Also attached is Warden DeWayne Hendrix's response dated May 27, 2020, which states, "Your request cannot be completed until you provide the following information: proposed release plan, including where you will reside, how you will support yourself, and, if the basis for the request involves your health, information on where you will receive medical treatment, and how you will pay for such treatment." The warden concludes, "Your circumstances do not meet the criteria for consideration for a RIS [reduction of sentence] under this category." The Government points out that Duvall provided no evidence that he resubmitted his request with the information required by the BOP, and, according to the Government, "the BOP has no record that he did so."

Duvall is foreclosed from obtaining relief if he has not submitted a request for compassionate release based on the circumstances raised in the instant motion to the warden of the facility where he is housed and exhausted his administrative remedies. The court is without authority to waive the exhaustion of administrative remedies or the 30-day waiting period. *See Alam*, 960 F.3d at 832 ("[B]ecause this exhaustion requirement serves valuable purposes (there is no other way to ensure an orderly processing of applications for early release) and because it is mandatory (there is no exception for some compassionate-release requests over others), we must enforce it."); *United States v. Garcia*, No. CR 2:18-1337, 2020 WL 3000528, at *3 (S.D. Tex. June 2, 2020) ("While the Court sympathizes with Defendant's plight, because he has failed to comply with the exhaustion requirements under § 3582, his motion is not ripe for review, and the Court is without jurisdiction to grant it."); *United States v. Garcia-Mora*, No. CR 18-00290-01,

2020 WL 2404912, at *2 (W.D. La. May 12, 2020) ("Section 3582(c)(1)(A) does not provide [the court] with the equitable authority to excuse [the defendant's] failure to exhaust his administrative remedies or to waive the 30-day waiting period."); *United States v. Collins*, No. CR 04-50170-04, 2020 WL 1929844, at *2 (W.D. La. Apr. 20, 2020); *see also Ross v. Blake*, ___ U.S. ___, 136 S. Ct. 1850, 1857 (2016) ("[J]udge-made exhaustion doctrines . . . remain amenable to judge-made exceptions," whereas "mandatory exhaustion statutes . . . establish mandatory exhaustion regimes, foreclosing judicial discretion."). Accordingly, at this time, without evidence that Duvall has exhausted his administrative remedies, the court does not have the authority to grant the relief Duvall requests. Moreover, even assuming that he did comply with the exhaustion requirement before filing the present motion, nothing in his motion indicates that extraordinary and compelling reasons exist to reduce his sentence and release him from confinement.

Congress did not define "extraordinary and compelling." Rather, it elected to delegate its authority to the United States Sentencing Commission ("the Commission"). *See* 28 U.S.C. § 994(t) ("The Commission, in promulgating general policy statements regarding the sentencing modification provisions in section 3582(c)(1)(A) of title 18, shall describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples."); *see also* U.S. SENTENCING GUIDELINES MANUAL § 1B1.13 (U.S. SENTENCING COMM'N 2018) ("USSG"). In Application Note 1 to § 1B1.13 of the USSG, the Commission defined "extraordinary and compelling reasons" to include the following four categories of circumstances: (i) certain medical conditions of the defendant; (ii) the defendant is 65 years or older and meets other requirements; (iii) the defendant's family has specified needs for a caregiver; and (iv) other reasons in the defendant's case that establish an

extraordinary and compelling reason. The court must also consider the factors set forth in 18 U.S.C. § 3553(a),[1] as applicable, and find that the sentence modification is consistent with the policy statements issued by the Commission. 18 U.S.C § 3582(c)(1)(A). The policy statement regarding compassionate release requires a determination that "the defendant is not a danger to the safety of any other person or to the community." U.S.S.G. § 1B1.13(2).

As grounds for relief set forth in his motion, Duvall states: "Petitioner Duvall outlines his underlying pre-existing medical conditions of being a severe asthma patient, with extreme high blood pressure that is associated with hypertension, in addition to having to use an 'Albuteral Inhaler' and prescribed medication of Lisinopril respective to each illness, all the while suffering from obesity at a weight of over 300 pounds and a body mass index of over 40 or higher." The USSG provides that extraordinary and compelling reasons exist regarding a defendant's medical condition when the defendant is "suffering from a terminal illness (*i.e.*, a serious and advanced illness with an end of life trajectory)" or when a defendant is "suffering from a serious physical or medical condition," "suffering from a serious functional or cognitive impairment," or "experiencing deteriorating physical or mental health because of the aging process, that substantially diminishes the ability of the defendant to provide self-care within the environment

---

[1] Section 3553(a) directs courts to consider: the nature and circumstances of the offense and the defendant's history and characteristics; the need to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; the need to deter criminal conduct; the need to protect the public; the need to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; the kinds of sentences and sentencing ranges established for defendants with similar characteristics under applicable USSG provisions and policy statements; any pertinent policy statement of the Commission in effect on the date of sentencing; the need to avoid unwarranted disparities among similar defendants; and the need to provide restitution to the victim. 18 U.S.C. § 3553(a).

of a correctional facility and from which he or she is not expected to recover." U.S.S.G. § 1B1.13 cmt. n.1(A).

In the case at bar, Duvall, age 45, provides no medical records or other documentation supporting his health claims. A review of Duvall's Presentence Investigation Report ("PSR"), prepared on July 21, 2015, reveals that he made no mention to Probation of suffering from asthma or hypertension or of having an enlarged heart; instead, he complained of chronic migraines, back pain, and acid reflux. He was, however, quite obese, with a weight of 348 pounds and a height of 6 feet, 1 inch. A BOP inmate profile, dated August 3, 2020, indicates that Duvall is classified as a Care Level 2 inmate, who is stable and provided chronic care. Medical records from the BOP submitted by the Government, dated June 18, 2019, reflect that Duvall was assessed as having asthma, backache, esophageal reflux, post traumatic seizures, hypertension, hyperlipidemia, and obesity. As the Government points out, however, these afflictions are controlled by medication. His medical records reflect that Duvall is prescribed an Albuterol Inhaler for asthma (only as needed), Colestipol for hyperlipidemia, Ibuprofen for backache, Lisinopril for hypertension, Omeprazole for esophageal reflux, and Oxcarbazepine for backache and seizures. During an examination, his physician noted that Duvall denied any complaint regarding hypertension or asthma, reported last having a seizure in 2014, and stated that the Omeprazole relieved his acid reflux. As for his obesity, the doctor noted that Duvall weighed 331 pounds and recommended exercise and weight loss, confirming that the complications of obesity (stroke, heart attack, heart failure, potential to develop diabetes, and sudden death) were discussed with Duvall. In any event, Duvall's obesity did not prevent or hamper him from engaging in a series of crimes prior to his arrest in 2013. Thus, Duvall's medical summary does not meet the criteria listed in the

guidelines. His reported medical conditions are not terminal, nor do they substantially diminish his ability to provide self-care. Probation confirms that Duvall is ambulatory and is confined in general population, while BOP records show that he has no medical restrictions and is assigned to regular duty work details. Hence, Duvall has failed to establish that a qualifying medical condition exists that would constitute extraordinary and compelling reasons to reduce his sentence. Even if Duvall had provided evidence that he was suffering from such a medical condition, "compassionate release is discretionary, not mandatory, and [may] be refused after weighing the sentencing factors of 18 U.S.C. § 3553(a)." *United States v. Chambliss*, 948 F.3d 691, 693 (5th Cir. 2020). Where, as here, the defendant has an extensive criminal history, the district court has discretion to deny compassionate release after weighing the evidence. *Id.* at 693-94.

Duvall's request for compassionate release potentially falls into the fourth, catch-all category of "other" extraordinary and compelling reasons, which specifically states that the Director of the BOP shall determine whether "there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C)." *Id.* § 1B1.13 cmt. n.1(D). Although Subdivision D is reserved to the BOP Director, the Commission acknowledged, even before the passage of the First Step Act, that courts are in the position to determine whether extraordinary and compelling circumstances are present. *United States v. Beck*, 425 F. Supp. 3d 573, 583 (M.D.N.C. 2019) ("Read in light of the First Step Act, it is consistent with the previous policy statement and with the Commission guidance more generally for courts to exercise similar discretion as that previously reserved to the BOP Director in evaluating motions by defendants for compassionate release."); *see Cantu*, 423 F. Supp. 3d at 352 ("[T]he correct interpretation of § 3582(c)(1)(A) . . . is that when a defendant

brings a motion for a sentence reduction under the amended provision, the Court can determine whether any extraordinary and compelling reasons other than those delineated in U.S.S.G. § 1B1.13 cmt. n.1(A)-(C) warrant granting relief.").

Here, there is no indication that the BOP Director made a determination regarding the presence of extraordinary and compelling reasons with respect to Duvall for any "other" reason. In exercising its discretion, the court also finds that no extraordinary and compelling reasons exist in relation to Duvall's situation. As of September 4, 2020, the figures available at www.bop.gov list 3 inmates and 6 staff members at FCI Forrest City Low as currently positive for COVID-19. The figures also indicate that 666 inmates (out of a total inmate population of 1,900) and 4 staff members have recovered, while no one at the facility has succumbed to the disease. Therefore, although Duvall expresses legitimate concerns regarding COVID-19, he does not establish that the BOP cannot manage the outbreak within his correctional facility or that the facility is specifically unable to treat him, if he were to contract the virus and develop COVID-19 symptoms, while incarcerated. *See Raia*, 954 F.3d at 597 ("[T]he mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release, especially considering BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread."); *United States v. Vasquez*, No. CR 2:18-1282-S-1, 2020 WL 3000709, at *3 (S.D. Tex. June 2, 2020) ("General concerns about the spread of COVID-19 or the mere fear of contracting an illness in prison are insufficient grounds to establish the extraordinary and compelling reasons necessary to reduce a sentence." (quoting *United States v. Koons*, No. 16-214-05, 2020 WL 1940570, at *5 (W.D. La. Apr. 21, 2020))); *United States v. Clark*, No. CR 17-85-SDD-RLB, 2020 WL 1557397, at *5 (M.D. La. Apr. 1,

2020) (finding the defendant had failed to present extraordinary and compelling reasons to modify his prison sentence because he "does not meet any of the criteria set forth by the statute" and he "cites no authority for the proposition that the fear of contracting a communicable disease warrants a sentence modification"). Furthermore, contracting the virus while incarcerated, even in conjunction with preexisting health conditions, is insufficient to establish exceptional and compelling circumstances warranting compassionate release. *See United States v. Jackson*, No. 3:16-CR-196-L-1, 2020 WL 4365633, at *2 (N.D. Tex. July 30, 2020) (finding that defendant had failed to present extraordinary and compelling reasons for compassionate release despite suffering from previous underlying health conditions and testing positive for COVID-19). Thus, Duvall has failed to establish that a qualifying medical condition or other reasons exist that would constitute extraordinary and compelling reasons to release him from prison.

The court further finds that compassionate release is not warranted in light of the applicable factors set forth in § 3553(a). *See* 18 U.S.C. § 3582(c)(1)(A) (requiring courts to consider the § 3553(a) factors before granting compassionate release); *Chambliss*, 948 F.3d at 693-94. The nature and circumstances of Duvall's offense of conviction entail his serving as a major supplier of methamphetamine in the Sherman/Denison, Texas, area, in 2012 and 2013. He pleaded guilty to participating in a drug-trafficking conspiracy involving the distribution of between 5 and 15 kilograms of a mixture or substance containing a detectable amount of methamphetamine or between 500 grams and 1.5 kilograms of methamphetamine (actual). His role in the offense was to supply coconspirators with kilogram quantities of methamphetamine from various sources for distribution to others in the Eastern and Northern Districts of Texas. During a traffic stop of Duvall in Tarrant County, Texas, on March 6, 2013, methamphetamine was found hidden behind

the glove box and numerous plastic baggies commonly used for drug packaging were located inside a coffee can in the vehicle.  A drug analysis revealed that 125.6 grams of methamphetamine "ice" were seized from the vehicle.  During a follow-up interview, Duvall claimed ownership of the methamphetamine and admitted that he had been purchasing ¼ to ½ pound of methamphetamine for about five months.  He further admitted supplying a coconspirator with 4-ounce quantities of methamphetamine "ice" for $3,100 every three days for a period of time.  Drug paraphernalia and a drug ledger were seized during a search of his residence.

Duvall has an extensive criminal history dating back to 1996, including prior convictions for driving with a suspended/invalid license (2), assault, theft, unlawful possession of a controlled substance (dihydrocodeinone), unlawful possession of a controlled substance (methamphetamine) (2), unlawful possession of marijuana, tampering with a government record, and forgery.  He failed to comply with previous terms of probation and also has a history of poly-substance abuse (alcohol, marijuana, cocaine, and methamphetamine) dating from age 16.  Duvall used methamphetamine intravenously between ages 25 and 28 and had been snorting or smoking from ½ ounce to 1 ounce of methamphetamine daily from age 28 until his arrest in March 2013 at age 37.  In addition, Duvall has served only approximately 60 months, or 40%, of his 151-month sentence of imprisonment.  As of June 1, 2020, BOP records reflect that he is classified as having a Medium Risk Recidivism Level.  Under the circumstances, the court cannot conclude that Duvall would not pose a danger to the safety of any other person or to the community, if released from confinement.

Moreover, the BOP has instituted a comprehensive management approach that includes screening, testing, appropriate treatment, prevention, education, and infection control measures

in response to COVID-19.  In response to a directive from the United States Attorney General in March 2020, the BOP immediately began reviewing all inmates who have COVID-19 risk factors, as described by the Centers for Disease Control and Prevention, for the purpose of determining which inmates are suitable for placement on home confinement.  *See Collins*, 2020 WL 1929844, at *3.  The BOP notes that inmates need not apply to be considered for home confinement, as this is being done automatically by case management staff.  To date, the BOP has placed 7,660 inmates on home confinement.  The March 2020 directive is limited to "eligible at-risk inmates who are non-violent and pose minimal likelihood of recidivism and who might be safer serving their sentences in home confinement rather than in BOP facilities."  *United States v. Castillo*, No. CR 2:13-852-1, 2020 WL 3000799, at *3 (S.D. Tex. June 2, 2020).  The BOP has the exclusive authority to determine where a prisoner is housed; thus, the court is without authority to order home confinement.  18 U.S.C. § 3621(b); *Castillo*, 2020 WL 3000799, at *3; *see United States v. Miller*, No. 2:17-CR-015-D (02), 2020 WL 2514887, at *1 (N.D. Tex. May 15, 2020) ("[N]either the CARES Act nor the First Step Act authorizes the court to release an inmate to home confinement.").

In his Memorandum to the BOP dated March 26, 2020, Attorney General Barr acknowledges that the Department of Justice ("DOJ") has an obligation to protect both BOP personnel and inmates.  He also notes that the DOJ has the responsibility of protecting the public, meaning that "we cannot take any risk of transferring inmates to home confinement that will contribute to the spread of COVID-19 or put the public at risk in other ways."  The Attorney General issued a subsequent Memorandum to the BOP on April 3, 2020, in which he emphasizes that police officers protecting the public face an increased risk from COVID-19 and cannot avoid

exposure to the virus, with their numbers dwindling as officers who contract the virus become ill or die or need to recover or quarantine to avoid spreading the disease. Accordingly, he cautions:

> The last thing our massively over-burdened police forces need right now is the indiscriminate release of thousands of prisoners onto the streets without any verification that those prisoners will follow the laws when they are released, that they have a safe place to go where they will not be mingling with their old criminal associates, and that they will not return to their old ways as soon as they walk through the prison gates.

As the court noted in *United States v. Preston*, "[t]he best predictor of how [Defendant] will behave if he were to be released is how he behaved in the past, and his track record is a poor one." No. 3:18-CR-307-K, 2020 WL 1819888, at *4 (N.D. Tex. Apr. 11, 2020) (quoting *United States v. Martin*, No. PWG-19-140-13, 2020 WL 1274857, at *3 (D. Md. Mar. 17, 2020)). Here, Duvall's track record is similarly a poor one.

In short, Duvall has failed to satisfy his burden of showing the necessary circumstances to warrant relief under the statutory framework to which the court must adhere. *See United States v. Dodge*, No. 17-323-01, 2020 WL 3668765, at *5 (W.D. La. July 6, 2020) (stressing that "the rampant spread of the coronavirus and the conditions of confinement in jail, alone, are not sufficient grounds to justify a finding of extraordinary and compelling circumstances"); *Koons*, 2020 WL 1940570, at *4-5 (same). As the court observed in *Koons*, rejecting the notion that it has "carte blanche" authority to release whomever it chooses, "[t]he Court cannot release every prisoner at risk of contracting COVID-19 because the Court would then be obligated to release every prisoner." *Dodge*, 2020 WL 3668765, at *6; *Koons*, 2020 WL 1940570, at *5.

III. Conclusion

In accordance with the foregoing analysis, Duvall's Motion for Compassionate Release (#522) is DENIED.

SIGNED at Beaumont, Texas, this 4th day of September, 2020.

*Marcia A. Crone*
MARCIA A. CRONE
UNITED STATES DISTRICT JUDGE